FANNIE A. CARMONA, an Infant, by ANTHONY CARMONA, Her Guardian ad Litem, Respondent, *v.* RENALDO PADILLA, an Infant, by MICHAEL PADILLA, His Guardian ad Litem, et al., Defendants, and CARMEN PADILLA, Appellant.

First Department, June 25, 1957.

*Bernard Meyerson* of counsel (*Richards W. Hannah,* attorney), for appellant.

*Murray D. Kors* of counsel (*Jack J. Albert* with him on the brief; *Kors, Albert, Glinert & Jacobs,* attorneys), for respondent.

BOTEIN, J. P. Upon the assumption that the jury, in returning a verdict in the infant plaintiff's favor, accepted her version of the happening of the accident, the following facts are implicit in the verdict.

The appellant, who is the only one of several defendants against whom a verdict was rendered, is the grandmother of the infant defendant. The infant plaintiff was 15 months old at the time of the accident. Her parents, in the course of a social visit, had brought her to the two-family house owned and in part occupied by appellant and her husband. The family of the infant defendant also lived in the house. His parents appear to have relinquished a great part of his upbringing to his grandmother. He slept in his grandparents' apartment, had his meals there, and spent much of his time with them. He was eight or nine years old at the time of the accident.

For some 10 minutes on the day the accident occurred the infant defendant, using a crude, home-made bow, repeatedly shot an arrow about a small, enclosed porch in the presence of his grandparents, his father, the infant plaintiff and her

parents. There came a time when his grandfather, father and the infant plaintiff's father left the porch, but before leaving his father took the bow and arrow away from the infant, saying, "You might hurt someone." This was said and done in the presence and within the hearing of appellant, who was only two or three feet away. The father hid the bow and arrow under some papers on the porch, an act which evidently was observed by appellant but not by her grandson. Then the men left and there remained on the porch the infant plaintiff, her mother, the infant defendant and his grandmother.

After his father's departure the infant defendant began to look for his bow and arrow. His grandmother showed him where it was hidden. When the infant plaintiff's mother echoed his father's apprehension that he might injure someone, the grandmother said, "He is big enough. He can take care of himself." After retrieving his bow and arrow the infant defendant continued to shoot the arrow for about five minutes, when ultimately the arrow hit the infant plaintiff in her eye, necessitating its removal.

Appellant's liability does not depend solely on her status as the grandmother of the boy who shot the arrow that caused the infant plaintiff's injury, nor on her status as co-owner of the property on which the incident occurred (cf. *De Ryss* v. *New York Cent. R.R. Co.*, 275 N. Y. 85). The jury could have found that appellant had exercised a substantial measure of supervision and control over the infant defendant for many years, and it is undisputed that the narrow, confined area in which he was shooting his arrow was part of her house. These combined circumstances invested her with a certain authority and accompanying responsibility to curb any conduct of her nine-year-old grandson that might foreseeably result in harm to others. Perhaps her duty to supervise her grandson was not, as an isolated responsibility, as extensive as that of a parent—a duty probably related to the powers that parents possess to restrain their children's conduct (*Steinberg* v. *Cauchois*, 249 App. Div. 518; *Kuchlik* v. *Feuer*, 229 App. Div. 338, affd. 264 N. Y. 542; *McCarthy* v. *Heiselman*, 140 App. Div. 240; *Schultz* v. *Morrison*, 91 Misc. 248, affd. 172 App. Div. 940; *Agnesini* v. *Olsen*, 277 App. Div. 1006). However, the position the grandmother occupied in the house and household where the accident occurred gave her much greater authority to restrain her grandchild than would be enjoyed by a stranger; and in circumstances where strangers are endowed with relatively slight supervision for control over children they have been held to be under a duty to prevent injury by

children to others (*Gerbino* v. *Greenhut-Siegel-Cooper Co.,* 165 App. Div. 763; *Travell* v. *Bannerman,* 71 App. Div. 439, revd. 174 N. Y. 47).

It must be appreciated that in this framework of the grandmother's powers and responsibilities the infant plaintiff does not seek to hold her liable for passively sitting by while her young charge played with a dangerous toy on her porch. On the contrary, the grandmother is charged with a conscious and affirmative act of negligence, and a subsequent course of conduct that was consistently negligent. The jury was justified in finding that she had told her grandson where to find the bow and arrow which she had heard his father only a few minutes earlier characterize as dangerous; that she had then permitted him to play with the bow and arrow in the immediate proximity of the 15-month-old plaintiff; and that she had dissuaded the plaintiff's mother from taking any action to safeguard her child. There were no exceptions taken to a charge that clearly and conclusively defined the obligations of all parties; and the jury's verdict, finding that only appellant of all the defendants was negligent, was amply sustained by the evidence. The indulgence of a doting grandmother, no matter how well-intentioned, cannot in circumstances such as these condone her negligent conduct.

Lastly, the verdict exonerating the infant defendant and finding his grandmother negligent is in no wise inconsistent. The grandmother owed her visitors a duty which was separate and quite different from that owed by her young grandson. On the evidence the jury could properly have found her negligent in doing what was tantamount to the affirmative act of placing a bow and arrow in the hands of an immature boy within the cramped confines of a small, enclosed porch. On the other hand, they could as properly have found that because of his tender years, the infant defendant was not negligent in discharging the arrow.

In returning its general verdict against appellant, the jury may well have found that the infant defendant acted on the assurances of his grandmother that there was no danger involved. He may have been no more imprudent under the circumstances than any other nine-year-old who acted similarly in reliance upon an adult's assurances and encouragement. The actions of the grandmother in encouraging her charge in activities which were foreseeably dangerous would be imprudent and would sustain a finding that she was negligent, even though the infant, as the actual perpetrator of the injury, was absolved. Different standards apply to each.

The liability, therefore, that the jury ascribed to the grandmother was in no way dependent upon or derived from her grandchild's conduct in his handling of the bow and arrow—a deed touched off by his grandmother's act, but otherwise distinct in time and character. The explanatory note to section 316 of the Restatement of the Law of Torts (dealing with a parent's liability for the acts of his child), provides as follows:

"(c) In order that the parent may be liable under the rule stated in this Section, it is not necessary that the actions of the child which he fails to prevent or control are such as to make the child himself subject to liability. The child may be so young as to be incapable of negligence, but this does not absolve the parent from the performance of his duty to exercise reasonable care to control the child's conduct. Indeed, the very youth of the child is likely to give the parent more effective ability to control its actions and to make it more often necessary to exercise it."

The judgment appealed from should be affirmed.

McNALLY, J. (dissenting). In this action grounded in negligence, the infant defendant, nine years of age at the time of the occurrence, and the said infant's father and grandfather were absolved by the verdict of the jury which brought in a verdict against the infant's grandmother. The case against the infant's stepmother was withdrawn. Plaintiff necessarily proceeded against the infant defendant on the theory that he was *sui juris*. The grandmother's liability was secondary. If the infant defendant was *sui juris* and was not guilty of negligence, then the verdict against the grandmother is inconsistent. (*Pangburn* v. *Buick Motor Co.*, 211 N. Y. 228; *Israel* v. *Wood Dolson Co.*, 1 N Y 2d 116.)

The sole basis upon which the verdict against the grandmother may stand is that there is implicit in the jury's verdict a finding that the infant defendant was *non sui juris*. The court charged in that regard as follows: "A child of tender years is not required to conform to the standard of behavior which it is reasonable to expect of an adult, but his conduct is to be judged by the standard of behavior to be expected from a child of like age, intelligence and experience."

The issue would have been clearly before the jury if the court had charged that the jury was entitled to decide under the facts and circumstances of this case whether or not the infant defendant had the capacity to apprehend the danger of his conduct and to exercise care and prudence. The fore-

going charge, standing alone, might have enabled the jury to pass on the issue. However, in the light of the subsequent proceedings, it would appear that the issue was not submitted to the jury. The infant defendant's attorney specifically requested the court to charge as follows:

" If the Court pleases, I would like the Court to charge that a child under 12 years of age is presumed to be non-sui juris, that is, incapable of exercising care for his safety and that of others.

" The Court: I refuse, except as charged.

" A Juror: Refused?

" The Court: Refused, except as charged."

The refusal to charge as requested served to limit the issue of liability on the part of the infant defendant as one sui juris. The response of the juror confirms this view.

Furthermore, on this record the grandmother was not chargeable with foreseeing the conduct of the infant defendant resulting in the injuries sustained by the infant plaintiff. There was no proof that the infant defendant had shown dangerous or vicious propensities. In fact, the infant defendant was endeavoring to be kind and considerate and entertain the infant plaintiff when this unfortunate accident occurred. Under the circumstances, the jury may not impose upon the grandmother liability for the consequences of an act with which the jury did not charge the perpetrator.

The judgment should be reversed and a new trial granted. (*Pangburn* v. *Buick Motor Co., supra,* pp. 236–237.)

FRANK, VALENTE and BERGAN, JJ., concur with BOTEIN, J. P.; McNALLY, J., dissents and votes to reverse and grant a new trial in opinion.

Judgment affirmed, with costs.