MONROE, J.,
— Defendant herein has been indicted as Octavio Colon Rivas, also known as Octavio R. Colon, upon two counts. The first count charges that on or about April 7, 1968, he did “unlawfully operate a motor vehicle upon the highways of the Commonwealth of Pennsylvania after his operating privilege had been suspended and revoked and before such operating privilege had been reinstated.” [1]
*460 The second count charges that defendant did on the date and year aforesaid “unlawfully drive and operate a motor vehicle upon the highways of the Commonwealth of Pennsylvania during and while his license and operating privilege was suspended under the provisions of the Motor Vehicle Safety Responsibility Act.” [2]
A jury trial was held on March 27, 1969, on defendant’s plea of not guilty as to the first count and guilty as to the second count. Defendant filed motions for a new trial and in arrest of judgment, upon the grounds that the verdict was contrary to the evidence, to the weight of the evidence, to the law, and was in direct contradiction to the charge of the court.
In considering the motions of defendant for a new trial and in arrest of judgment following conviction, the court must accept as true the testimony submitted by the Commonwealth as well as the reasonable inferences which can properly be drawn therefrom: Commonwealth v. Jackson, 13 D. & C. 2d 218, affirmed 187 Pa. Superior Ct. 2. Whether a motion for a new trial is granted or not upon the ground of the verdict being against the weight of the evidence depends upon whether there is sufficient evidence for the jury to find the facts to render a verdict of guilty under the law as charged by the court: Commonwealth v. DiPiero, 205 Pa. Superior Ct. 312, 315. In passing upon the motion in arrest of judgment, the sufficiency *461 of the evidence must be evaluated upon the entire trial record. All of the evidence must be read in the light most favorable to the Commonwealth and it is entitled to all reasonable inferences arising therefrom. The effect of such a motion is to admit all the facts which the Commonwealth’s evidence tends to prove. Also, in passing upon such a motion, all evidence actually received must be considered, whether the trial rulings thereon were right or wrong: Commonwealth v. Tabb, 417 Pa. 13; Commonwealth v. Stukes, 435 Pa. 535; Commonwealth v. John Bendas, 39 North. L. J. 141. Having examined the entire record in this case, there is no question in our minds that the evidence is sufficient to sustain the verdict of guilty.
Defendant did not testify on his own behalf. At the trial it was apparent and was conceded that defendant is of Spanish speaking lineage, birth and culture. By competent testimony of a witness familiar with Spanish customs, language and culture, it was established that in countries of Spanish tradition it is customary to name offspring of a Spanish marriage by the given first name, followed by the family name of the father, and followed, in turn, by the family name of mother, and that it is also not unusual for persons thus named to use as a surname either the father’s family name, or the mother’s family name, or to alternate at times between the two, thus if a person whose given name is John was born of a father whose family name was Smith and of a mother whose name was Jones, it would be proper for that person to use the name John Smith Jones, or John Smith, or John Jones, of John Jones Smith. Consequently, the jury could have reasonably concluded from such testimony that a person of Spanish tradition whose first name was Octavio and whose parents had *462 family names of Colon and Rivas could use properly the name Octavio Colon Rivas, or Octavio Rivas Colon, or Octavio R. Colon.
The factual sequence of events are stated in large measure in defendant’s “History of the Case” set forth in his argument court brief. We quote therefrom, omitting his parenthetical references to the notes of testimony and we enlarge thereon by footnotes deemed necessary for clarity purposes and by introduction, on occasion, of factual findings which the jury reasonably could have made and undoubtedly did make. We accept the factual statement in the “History of the Case”: “Notification of the suspension of Defendant’s motor vehicle operator’s license[3] was mailed to Defendant on May 18, 1962. The suspension was for an indefinite period under the Financial Responsibility Act, Section 1413 of the Motor Vehicle Code,[4] and commenced on May 29, 1962. On May 31, 1962, the Department of Revenue received the defendant’s operator’s and registration cards to which the suspension referred. A notice dated May 31, 1967 was sent to Defendant[5] informing him that any current operator’s card in his possession was revoked for one year for the alleged failure to stop at the scene of an accident which allegedly occurred on April 24, 1965.-[6] Defendant’s operator’s card was *463 not returned until December 16, 1968 pursuant to the May 31,1967 notification.”
We here interpolate the following:
In the latter part of 1967, the Department of Revenue received an application for an operator’s license. It is marked “Learner’s Permit Number 15453254.” The blanks in the exhibit had been filled in in longhand. The name of the applicant was given as Octavio R. Colon with the date of birth as December 5, 1930, and address as 318 Lakeland Avenue, Bristol, Bucks County, Pa. There were a series of questions upon the form, the answers to which were filled in in longhand, pertinently, as follows: 10. Have you heretofore been licensed or privileged to operate a motor vehicle in this or any other State? 11. Has your right to apply for such license or your privilege to operate in this or any other State ever been suspended or revoked? 12. Has your license, right to apply for operating privilege been restored? 16. Are there any unpaid judgments resulting from an automobile accident recorded against you? To the tenth, twelfth and sixteenth questions, the answer in longhand “NO” appears. After the twelfth question the printed word “YES” has been ticked in longhand. The application bore a signature in longhand “Octavio R. Colon.” Upon the face of the application is a stamp with the following legend “Approved for issue Dec 4 1967 Express (ineligible mark).” Printed upon the face of the application was “NOTE: Your license when issued will expire on the last day of your birth month but will not exceed one year.”
We now return to quote defendant’s case history:
“On April 7, 1968 the Defendant was stopped by the police who inspected his operator’s card.[7] On May *464 15, 1968 a police officer served a warrant on the Defendant for driving on April 7, 1968 under suspension of an operator’s license. Defendant was issued an operator’s license on February 21, 1968 which was valid until December 31,1968.” [8]
It was stipulated into evidence by the Commonwealth and defendant that the records of the Department of Revenue do not contain an entry or record showing that the suspension effective May 29, 1962, had ever been lifted, that the operator’s license of Octavio Colon Rivas had ever been reinstated since that time.
There can be no doubt that the jury reached the evidentially justified conclusion that it was defendant who filed with the Secretary of Revenue the application for operator’s license, above referred to, as that application bore one of the names which defendant used, it bore an address which defendant used, it set forth a date of birth of the applicant as December 5, 1930. This conclusion was justified because the evidence established, and defendant has admitted in his brief, that defendant was issued an operator’s license on February 21, 1968, that license bore the same number as that on the application, above mentioned, namely, 15453254, the license was issued in the same name as that contained in the application and the address was the same and the license was stated to expire December 31, 1968, in fulfilment of the scripture on the application “Your license . . . will expire on the last day of your birth month.” It follows therefrom, and the jury undoubtedly concluded, that *465 the license which was issued to defendant on February 21, 1968, was the product of the application above referred to and also was the license which defendant displayed to the police officer on April 7, 1968, which resulted in his prosecution for violation of section 1413 of The Vehicle Code. Furthermore, the facts that defendant’s license had been suspended by order of May 18, 1962, for a violation of section 1413 of The Vehicle Code, and was revoked for one year on May 31, 1967, for alleged failure to stop at the scene of an accident, both admitted by defendant in his brief, and there being no record in the Secretary of Revenue’s file showing restoration of the privileges which were suspended by the notice of May 18, 1962, leads inevitably to the conclusion that the suspended and revoked statuses of defendant’s license continued in effect until April 7, 1968, the date of the offense upon which the prosecution is based, unless the issuance of the license to defendant on February 21, 1968, constituted a termination of the suspension of May 29, 1962, and of the revocation of May 31, 1967, and reinstated the license of defendant. The answer requires an interpretation of the license suspension and financial responsibility provisions of The Vehicle Code and determination of defendant’s intent in filing with the Secretary of Revenue in 1967 the application for an operator’s license. The briefs filed by the Commonwealth and by defendant are of no value or assistance to us in this task. Our personal research has not disclosed decisions of Pennsylvania which are directed to the solution of the problem before us; we have, however, found reported decisions of appellate courts of other States which are of assistance and to which we shall refer.
The Motor Vehicle Safety Responsibility article XIV of The Vehicle Code, in pertinent part of section 1413 provides:
*466 “(a) The Secretary, upon receipt of a certified copy of a judgment,[9] shall forthwith suspend the license ... of any person against whom such judgment was rendered . . .”
Section 1414 provides:
“Such license, . . . shall remain so suspended and shall not be renewed nor shall any such license or registration be thereafter issued in the name of such person, including any such person not previously licensed, unless and until every such judgment is stayed, satisfied . . . and until the said person gives proof of financial responsibility ...”
Obviously, this section limits the licensing and license-renewing powers vested in the Secretary of Revenue by sections 601 and 607 of the code, divesting him completely of authority to reinstate or renew the license suspended under the mandate of section 1413, or to issue a license in the name of the person against whom the judgment had been entered until the judgment has been stayed or satisfied, and üntil the person against whom the judgment had been entered has given proof of financial responsibility. It is to be noted that the mandates of sections 1413 and 1414 are directed against the person of the operator and judgment debtor and not against the name alone, and, therefore, would prohibit the reinstatement, renewal, or the issuance of a license to the person whose license had been suspended by the mandate of section 1413, in whatever name he may be known, or assume. The word “such” in section 1414 is directed to the license and the person and not to the license and name.
The quoted portions of section 1413 and 1414, *467 which are the only presently pertinent portions, are mandatory and vest in the secretary no discretion whatsoever. Therefore, when the secretary has suspended a license under section 1413, any act of renewal or reinstatement thereof, if granted before the conditions imposed by section 1414 have been fulfilled, is beyond his power, is null and void and of no effect.
The application for an operator s license filed by defendant with the secretary cannot be construed as an application for termination of the suspension effective May 29, 1962, under section 1413 of the code, and as an effort to inform the secretary of applicant’s fulfillment of the conditions imposed by section 1414; nor can it be construed as an application to terminate the revocation imposed May 31, 1967. Its manifest falsehoods establish it as a deliberate and intentional effort by defendant to deceive the secretary and thus obtain from him an operator’s license to be issued to defendant in one of the names then unknown to the Secretary. It was successful; its purpose was accomplished. But it would not have been had the contents of the application been truthful. The presumption is that the secretary would not have issued the license in violation of the law: section 1414. The secretary, having been deceived by the falsehoods of defendant, unwittingly exceed his authority in issuing to defendant the license card held by defendant on April 7, 1968; hence, his act was void and of no effect, the suspension of May 29, 1962, was not terminated, the license, i.e., privilege, of defendant to operate a vehicle was not renewed or reinstated, nor had he been granted a new privilege to operate. The card issued to him and which he held on April 7, 1968, was only a false symbol of a privilege which did not exist. Compare Dinger v. Burnham, 228 S.W. 2d 696 (Mo. 1950), wherein it appeared that Charles Dinger, age *468 15, had produced a driver’s license to operate an automobile, having made a false affidavit that he was 16 years old. The Missouri Motor Vehicle Driver’s License Law, section 8446, R. S. 1939, Mo. R.S.A., provides, page 699:
“The commissioner shall not issue any license hereunder:
“1. To any person, as an operator, who is under the age of sixteen years . . .”
Said the Supreme Court of Missouri, page 699:
“It follows that there is no authority to issue a driver’s license to one under the age of sixteen years, and that the license secured by Charles Dinger was void and of no effect.”
Compare also Schultz v. Morrison, 91 Misc. 248, 154 N.Y.S. 257, affirmed 172 App. Div. 940, 156 N.Y.S. 1144, wherein a minor aged 16 held a chauffeur’s license. The New York Highway Law provided, page 259:
“No chauffeur’s license shall be issued to any person under eighteen years of age.”
Said the court, page 259:
“. . . We think the license he held was absolutely void, not simply voidable. The language of the statute is prohibitive.”
Also, page 260:
“The secretary of state had no power or authority to issue it. The prohibition of the statute goes to the jurisdiction to issue . . .”
See also Brener & Lewis, Inc. v. Fawcett Publications, Inc., 90 N.Y.S. 2d 853, holding void a real estate salesman’s license which had been issued in violation of the New York Real Property Law, also Di Cecca v. Bucci, 178 N.E. 447 (Mass.), and Ricker v. Boston Elevated Ry. Co., 194 N.E. 815 (Mass.), holding falsely-registered vehicles not to be legally registered.
*469 On the other side of the coin is McDowell, Jr. v. Davis, 442 P. 2d 856 (Ariz.), wherein a minor, age 15, obtained an operator’s license by a misrepresentation of his age as 16. It was held that the license was voidable only and that the statutes do not purport to make a license so obtained void, page 862:
“. . . The applicable statutes merely provide that a license obtained in violation of the law may be ‘cancelled’ by the Department, and where the licensee has actually been convicted of perjury in making application for a license the Department must ‘revoke’ the license.”
This brings us to a consideration of the licensing provisions of the code. Section 604, 75 PS §604, pertinently provides:
“(a) An operator’s license or learner’s permit shall not be issued to any person under the following conditions:
“(2) When his operating privilege is suspended.
“(3) When his operating privilege is revoked.
“(4) When such person’s name appears upon department’s prohibitory list, or when his privilege to apply for an operator’s license or learner’s permit has been suspended, and before such privilege has been reinstated.
“(9) If a license or learner’s permit is issued in contradiction of any of the provisions of this section, the secretary may suspend or cancel such license or permit in order to effectuate the intent of the section.”
Section 624(8) of the code makes it unlawful for any person to make a false statement or conceal a material fact or otherwise commit a fraud in any application and makes any person violating such provision subject to a fine of $100 or 20 days imprison *470 ment upon conviction before a justice of the peace in a summary proceeding. There is no provision under article VI of The Vehicle Code declaring to be absolutely void any license issued as the result of false representations made to the secretary or issued in contradiction of any of the provisions of section 604, or of any other section or provision of the code. The question, therefore, arises whether the above-quoted provisions under article VI of The Vehicle Code, and especially the provisions of subsection (9) of section 604, do not indicate a legislative intent that licenses issued in contradiction of the provisions of the code and as a result of falsehood are voidable only and, consequently, remain in effect until suspended or can-celled by the secretary.
The jury having found defendant not guilty on the first count, that is, the alleged violation of section 624(6) of The Vehicle Code, we are not required to take a position, and do not, on the question whether a license which has been revoked or suspended by the secretary under the provisions of the various sections of article VI of the code and which is renewed or reinstated in contradiction of the provisions of section 604, or as a consequence of falsehood and deception imposed upon the secretary, is void or voidable only. It appears to us that the legislature has created two separate and distinct categories of license suspensions, those provided for in article VI and those provided for in article XIV of the code. The powers of suspension and revocation contained in article VI are of general application to the competency of an operator to drive, violations of The Vehicle Code, the operation of a vehicle in the commission of other crimes, and in violation of the public utility laws, whereas the suspensions authorized under article XIV are of a distinct class and go to the financial responsibility *471 of the operator to respond to damages caused by his unlawful or negligent operation of the vehicle. Compare Commonwealth v. Rushing, 10 Chester 467. If sections 604 and 1414 are in conflict, then the latter shall prevail, being a special provision: Statutory Construction Act of Act of May 28, 1937, P. L. 1019, sec. 63, 46 PS §563. Therefore, the suspension made effective May 29, 1962, was still in effect on April 7,1968, and the license card which defendant then held was null and void and of no effect and he was, consequently, then operating a motor vehicle in violation of section 1432 of The Vehicle Code and the verdict of guilty on the second count of the indictment was proper.
Defendant has assigned as a reason for relief that the verdict was contrary to the charge of the court. This is not necessarily true. The trial judge, the undersigned, stated to the jury page 55:
“So, if this defendant held a license, operator’s license, registration license, issued by the Department of Revenue at the time the officer stopped him in April of 1968, he cannot be found guilty of either of these offenses, no matter if he did get them by fraud. . . .”
This the trial judge then believed to be a correct statement of the law. Whether it was correct with respect to the first count need not be decided, as we have above indicated, because defendant has been found not guilty of the first count; it was, however, error as to the second count. But it was error in defendant’s favor and has done him no injury and is, therefore, not a reason for granting defendant’s motion in arrest of judgment or motion for a new trial. Defendant argues that there is an inconsistency in the verdicts of not guilty as to the first count and guilty as to the second count, which demonstrates that the *472 jury did ignore the court’s (erroneous) instruction above quoted. In making this argument, defendant necessarily assumes that on the same factual findings the jury found defendant’s license to have been reinstated as to the first count but not as to the second count. This assumption is not necessarily correct. In order to find defendant not guilty on the first count, the jury would have to have found that there was not sufficient evidence to establish, beyond a reasonable doubt, that defendant’s operating privileges had been suspended under section 624(6) of the code, or that such suspension had been established, beyond a reasonable doubt, and that the operating privilege had thereafter been reinstated or, alternately, that there was not sufficient evidence to establish that it had not been reinstated. On the other hand, to justify the verdict of guilty as to the second count, the jury would have to have found, beyond a reasonable doubt, that defendant’s operating privileges had been suspended under the financial responsibility provisions of the code, section 1413, and had not been reinstated. However, the verdicts can be rationalized without inconsistency.
Concerning the burden of proof on the first count, the court instructed the jury, page 47:
“With respect to the first count, that count charges that Octavio Colon Rivas, also known as Octavio R. Colon, did on April 7, 1968, unlawfully operate a motor vehicle upon the highways of the Commonwealth of Pennsylvania after his operating privilege had been suspended and revoked and before such operating privilege had been reinstated. This count of the indictment is drawn under Section 624, subparagraph 6 of The Vehicle Code, which says that: It shall be unlawful for any person to commit any of the following acts: (6) To operate any motor vehicle or tractor *473 upon the highways of this Commonwealth after the operating privilege is suspended or revoked and before such operating privilege has been reinstated.
“In support of this suspension the Commonwealth relies on the stipulation of counsel, after review of the Department’s records, a stipulation that those records, if entered into evidence, would show on their face that by a notice dated May 31, 1967, addressed to Octavio Colon at 442 Court A, Terrace 2, Bristol, Pennsylvania, any current operator’s card in his possession was revoked for one year for failure to stop at the scene of an accident which allegedly occurred on April 24, 1965, . . .
“This stipulation states that the Commonwealth has such a notice in its possession. There is no evidence that this notice was actually sent to Octavio Colon or that he received it and, of course, a notice of that type to be effective must be mailed, forwarded to the licensee. . .
“Now, we have told you that there is no evidence before the Court to establish that actual notice of this revocation was received by the person named, namely, Octavio Colon, and that is a prerequisite to the effectiveness of the notice unless the notice had been sent to the address which the Commonwealth had in its files of the licensee, namely, that the notice had been forwarded by the Department to the person named, Octavio Colon, at 442 Court A, Terrace 2, Bristol, Pennsylvania. The file would not actually prove a forwarding of notice.”
Under the foregoing instructions, the jury was correctly advised as to the theory and basis of the first count of the indictment and the jurors could very well have concluded that the Commonwealth had failed to establish, beyond a reasonable doubt, an effective revocation of defendant’s operating privileges *474 under the provisions of section 624(6) of The Vehicle Code because of lack of proof of proper notice to defendant and, hence, its verdict would have been rational, reasonable and not in contradiction of the instruction of the court.
Still alluding to the verdict on the first count of the indictment, the notice of May 31, 1967, was addressed to “Octavio Colon.” The application for an operator’s license which was thereafter filed with the department was in the name of Octavio R. Colon and signed with the name Octavio R. Colon. The jury could have concluded, beyond a reasonable doubt, that the notice of revocation was received by defendant and the revocation was, therefore, effective, that the application for a license being in the name of Octavio R. Colon, which is quite similar to Octavio Colon, the Secretary of Revenue knew, or correctly assumed, that the notice of revocation and the application were addressed to and emanated from the same person and that, therefore, the Secretary of Revenue intended to reinstate the license revoked by the notice of May 31, 1967. Accepting the instructions of the trial judge, even though the application contained falsehoods, the jury could have concluded that the operating privileges of defendant which had been revoked by the notice of May 31, 1967, by reason of his involvement in an accident on April 24, 1965, had intentionally been reinstated by the secretary, unaware that this licensee was the same person whose license was suspended May 29, 1962, for lack of financial responsibility. If this is the basis of the verdict as to the first count, it would not establish the inconsistency hereinabove suggested.
With relation to the second count, the trial judge instructed the jurors on the legal provisions of article XIV, the motor vehicle safety responsibility provi *475 sions. He explained to them the suspension notice effective May 29, 1962, issued to Octavio Colon Rivas at 131 North Hawthorne Avenue, Langhome, and the secretary’s receipt of the license card on May 31, 1962. He explained the burden of proof which was upon the Commonwealth in connection therewith and specifically said, page 55:
. . And when we turn to Section 1432, which is the first section, the one in which allegedly the license and registration was suspended because of failure to file financial responsibility, while that does not specifically spell out the words “before the license is reinstated’ but merely says it shall be unlawful to operate while the license is under suspension, and does not go on to say “or before it is reinstated,’ yet it had been construed by the authorities that there has to be a reinstatement of the operating privileges under that section. So, the law is the same for that, and it is my duty to give you the law as I see the law to be. It is your duty to accept it as I give it to you and to find the facts in the case, then apply the law to the facts as you find them.
““So, the question before you is: Has the Commonwealth convinced you beyond a reasonable doubt that this defendant’s operating privileges and registration privileges had been suspended, and was the suspension still in effect at the time of his arrest in Aprfi 1968? If they were not still under suspension then he must be found not guilty, even though you may not approve of any way that he might have gotten his operator’s cards back.”
Later, the trial judge said, page 57:
‘“I have this thought of my own, which you need not accept because you are the jury. My duty is to give you the law. It is your duty to accept the law, then you find the facts and apply the law to the facts as *476 you find them. But it would seem to me that if the defendant is guilty of one of these offenses he is guilty of both. He is either guilty or not guilty of both, it seems to me, but that is a matter for your decision and judgment.”
In view of the foregoing, it is not only possible but indeed probable that the jury, in considering the suspension order effective May 29, 1962, concluded, beyond a reasonable doubt, that defendant’s license was suspended thereby and, considering further, the fact that that notice was addressed to defendant as “Octavio Colon Rivas” at 131 North Hawthorne Avenue, Langhome, and further, considering that the application for the license in 1967 was in the name of, and signed by, Octavio R. Colon at 318 Lakeland Avenue, Bristol, Pa., the secretary did not know and had no reason to assume that each document referred to the same person and, therefore, had no intention of reinstating the license which was suspended by the May 29, 1962, notice, and therefore, in issuing the license dated February 21, 1968, which defendant had in his possession at the time of his arrest, did not intend to give effect to that license as a reinstatement of the license which had been suspended on May 29, 1962, and, therefore, concluded that there was no reinstatement thereof. If this is the basis for the jury’s verdict on the second count, the verdict was rational, reasonable and not contrary to the instructions of the court, and there is no inconsistency in the two verdicts.
ORDER
And now, June 8, 1970, for the foregoing reasons, defendant’s motions for a new trial and in arrest of judgment are overruled, denied and dismissed. Defendant is directed to appear for the imposition of sentence at a date and time to be fixed by the district attorney.

 A violation of section 624 of The Vehicle Code of April 29, 1959, 75 PS §624:
“It shall be unlawful for any person to commit any of the following acts: ... (6) To operate any motor vehicle . . . upon the highways of this Commonwealth after the operating privilege is suspended or revoked and before such operating privilege has been reinstated.”

 A violation of section 1432 of The Vehicle Code, 75 PS §1432:
“(a) Any person whose license or registration . . . has been suspended or revoked under this article, and who during such suspension or revocation drives any motor vehicle upon any highway . . . except as permitted under this article, shall be guilty of a misdemeanor . . .”
The “article” referred to here is article XIV controlling the Motor Vehicle Safety Responsibility provisions of The Vehicle Code, more frequently referred to as the Financial Responsibility Act.

 The license had been issued to defendant in the name “Octavio Colon Rivas.”

 Failure to satisfy a judgment awarded by a court of Bucks County and to file proof of financial responsibility.

 By the Secretary of Revenue addressed to defendant in the name “Octavio Colon.”

 There is nothing in the evidence to establish directly or by inference that defendant had in his possession on May 31, 1967, an operator’s license or that such a license had been issued or reinstated to him after the suspension of May 18,1962, but prior to May 31, 1967.

 The card was issued to “Octavio R. Colon, 318 Lakeland Avenue, Bristol, Pennsylvania” and defendant told the police officer *464 that he was “Octavio R. Colon” and that he resided at 318 Lakeland Avenue, Bristol, Pa.

 The license was numbered 15453254; it was issued in the name and address “Octavio R. Colon, 318 Lakeland Avenue, Bristol, Pennsylvania”; its expiration date was December 31, 1968.

 That is, a judgment entered against a person who was the operator of a vehicle in an action brought against such operator by reason of his operation of the vehicle.